UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| TERRI LEMASTER and<br>PERFORMANCE MEDIA, LLC, | )<br>)<br>) | |
| Third-Party Plaintiffs, | )<br>) | No. 7:17-CV-66-REW-EBA |
| v. | )<br>)<br>) | OPINION & ORDER |
| RANDALL POWELL and BRENDA<br>POWELL, | )<br>) | |
| Third-Party Defendants. | *** *** *** *** | |

**I.  BACKGROUND**

For more than two years, Randall and Brenda Powell have been parties to the action originally between Outfront Media, LLC, and Terri LeMaster and Performance Media, LLC (collectively, LeMaster). The Court's summary judgment ruling (DE 131) sets out the full narrative. In relevant part, a dispute over billboard ownership and electronic advertising credits led to a suit in which Outfront charged LeMaster with conversion and tortious interference with contract. *See* DE 1. LeMaster counterclaimed for tortious interference with prospective economic advantage. DE 37. LeMaster, a year into the case, also filed a third-party complaint against the landowner Powells, bringing claims of negligent misrepresentation, breach of contract, and indemnity. DE 38.

No party timely moved for Rule 12 dismissal. *See* DE 150 (Powells' motion to dismiss, filed September 19, 2019). Outfront and LeMaster both timely sought summary judgment on the claims as between them, but neither LeMaster nor the Powells did so regarding the third-party claims. *See* DE 86 (Minute Entry noting dispositive motion deadline of December 17, 2018); DE

1

100 (Outfront's motion for summary judgment); DE 101 (LeMaster's motion for summary judgment); DE 131 at 8 n.5 ("LeMaster does not seek summary judgment on her unresolved negligence and breach of contract third-party claims against the Powells."). The Court resolved the cross-motions partially in Outfront's favor, concluding that Outfront's billboard leases were effective and that LeMaster had therefore converted Outfront's property. *See* DE 131 at 22–25. The Court further determined that neither Outfront's nor LeMaster's tortious interference claims could succeed. *See id.* at 25–29. The Order directed the Kentucky Transportation Cabinet to transfer the at-issue electronic advertising credits to Outfront. *See id.* at 29. The ruling reserved for the jury the question of Outfront's consequential damages. *See id.* at 29–30.

A jury trial never came. Instead, two weeks before the scheduled January 2020 trial, Outfront moved to voluntarily dismiss its damages claim against LeMaster. DE 178. As explanation, Outfront cited the time and expense of the case, highlighting LeMaster's lack of cooperation during discovery, LeMaster's *pro se* motion lodging accusations of collusion among parties and counsel, and LeMaster's history of representation (which, at that point, included six different sets of lawyers). *See id.* at 1. Outfront further argued that the sought dismissal would moot LeMaster's third-party claims against the Powells. *Id.* at 2. The Court ordered LeMaster to respond to Outfront's motion and clarify the status of her third-party claims. DE 179.

LeMaster failed to comply. Instead, LeMaster's counsel—the seventh to represent her— moved to withdraw, citing ethical concerns. DE 180. The Court allowed withdrawal, ordered LeMaster to obtain new counsel within two weeks, and gave LeMaster until January 24, 2020, to clarify whether her claims against the Powells would survive Outfront's voluntary dismissal. DE 181. The Court further granted Outfront's motion and dismissed without prejudice the damages claim against LeMaster, such that only LeMaster's third-party claims remained pending. *See id.*

The Court warned LeMaster that it would consider dismissal of the "third-party claims absent a timely and persuasive contrary filing." *Id.*

On January 3, 2020, LeMaster asked for a thirty-day extension of time to find new counsel; the Court denied the extension request but relieved her of the intermediate counsel deadline (which would have elapsed that day). DE 182; DE 184. The Court again warned LeMaster about the likelihood of dismissal, noting that an LLC may not proceed *pro se*. DE 184.

LeMaster, individually, now proceeding *pro se*, timely responded to the Order seeking clarification of her third-party claims. DE 185. No response was filed on behalf of Performance Media, and the entity does not have counsel. The Powells responded to LeMaster's filing. DE 186. Several weeks later, LeMaster tendered a "supplemental" response. DE 187.

## II.  STANDARD

### A. Failure to Prosecute

A court may dismiss a complaint for failure to prosecute. *Link v. Wabash R. Co.*, 82 S. Ct. 1386, 1390 (1962).

> The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* at 1388–89 (1962). Rule 41 recognizes this inherent authority and permits dismissal *sua sponte* (despite the Rule's reference to a motion by a defendant). *See id.* at 1388; *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991); Fed. R. Civ. P. 41(b).

> When contemplating dismissal under Rule 41(b), a court must consider: (1) whether the party's failure to cooperate is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dilatory conduct of the party; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 615 (6th Cir. 1998). "The dismissal of an action for . . . failure to comply is a harsh sanction which the court should order only in extreme situations showing 'a clear record of delay or contumacious conduct by the plaintiff.'" *Carter v. Memphis*, 636 F.2d 159, 161 (6th Cir. 1980).

### B. Supplemental Jurisdiction

"A district court 'may decline to exercise supplemental jurisdiction over a claim' grounded in state law if it 'has dismissed all claims over which it has original jurisdiction.'" *Bartlett v. Washington*, 793 F. App'x 403, 408 (6th Cir. 2019) (quoting 28 U.S.C. § 1367(c)). The decision to retain jurisdiction over supplemental state-law claims "depends on 'judicial economy, convenience, fairness, and comity.'" *See Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). Relevant factors may include case age, amount of discovery, and posture (such as "an extensively briefed summary judgment motion . . . ripe for a ruling"). *See Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287–88 (6th Cir. 1992).

## III. ANALYSIS

### A. Failure to Prosecute

At this stage, the pertinent issue is whether LeMaster's third-party claims—in particular, negligent misrepresentation and breach of contract—survive Outfront's voluntary dismissal. *See* DE 181 at 2 (concluding that Outfront's dismissal would obviate LeMaster's damages liability and thus her indemnity claim). The Court queried the parties in an attempt to balance fairness with efficient resolution. LeMaster, by her response, opposes dismissal of the Powells (and thus the remaining case) and appears to assert that all three original third-party claims (including indemnity) persist. *See* DE 185 at 1. LeMaster identifies seven categories of damages sought from the Powells, including "[l]ost advertising revenue, . . . [i]ndemnity of value of digital

4

credits, . . . [i]ndemnity of any damages if awarded to another party, . . . [a]ttorney fees and costs incurred to date and to finality of case, . . . [c]ost to purchase the billboard structures, . . . [and] [c]ost of removal of billboard structures." *See id.* LeMaster then addresses a variety of topics including lease effectiveness and abandonment (subjects of the summary judgment ruling), collusion between counsel for Outfront and counsel for the Powells (subject of the earlier *pro se* motion), LeMaster's history of counsel problems, and supposed mistakes in the summary judgment ruling. *See id.* at 2–14. LeMaster does not explain the effect of Outfront's dismissal on her claims. The Powells raise several points in response, including the lack of entity representation, the nonexistence of indemnity liability (because Outfront has dismissed the damages claim), and problems with LeMaster's theory as to each of the remaining claims. *See* DE 186 at 2–4. The Powells further note LeMaster's history of representation and argue that dismissal is warranted in light of the earlier summary judgment ruling (DE 131). *See id.* at 4.

Here, the Court recognizes the extreme nature of the sanction but nonetheless dismisses claims by Performance Media for failure to prosecute. Performance Media has failed to retain counsel, in violation of the previous Order (DE 181) and despite repeated warnings that an LLC may not proceed *pro se*. *See* DE 111 ¶ 3; DE 148; DE 184. It is beyond dispute "that a corporation cannot appear in federal court except through an attorney." *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984). "An officer of a corporation, who is not a licensed attorney, is not authorized to make an appearance in this Court on behalf of the corporation." *Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970). This principle applies with equal force to a limited liability company. *See Surgical Sols., LLC v. Lance*, No. 18-cv-2125-SHM-tmp, 2018 U.S. Dist. LEXIS 93330, at *1 (W.D. Tenn. June 4, 2018); *Greenwood Holdings, LLC v. Meggitt Training Sys.*, No. 09-326-JBC, 2011 U.S. Dist. LEXIS 13892, at *1 (E.D. Ky. Feb. 11, 2011). In

5

this case, despite numerous opportunities, LeMaster—as the sole member—has failed to either retain or keep counsel for Performance Media. The entity has been a party throughout; Outfront named both LeMaster (individually) and Performance Media, LLC, as Defendants, and the same parties asserted the third-party claims against the Powells. *See* DE 1; DE 38.

Nothing in the record appears to have addressed whether LeMaster individually and the entity are proper Third-Party Plaintiffs (or, for that matter, Defendants). The Court does so now, at least in part, because the Powells have raised the issue and because the continued involvement of the unrepresented entity is part of the basis for dismissal. *See* DE 186 at 2 (arguing that the unrepresented Performance Media must be dismissed and that LeMaster individually is not a proper party).

Rule 17 provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "The real party in interest analysis turns upon whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief." *Certain Interested Underwriters at Lloyd's v. Layne*, 26 F.3d 39, 42–43 (6th Cir. 1994). In a diversity action, the governing substantive law is state law. *Id.* at 43.

Under Kentucky law,[1]

> [a] member of a limited liability company shall not be a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company, except if the object of the proceeding is to enforce a member's right against or liability to the limited liability company or as otherwise provided in an operating agreement.

KRS 275.155. Courts have long respected the distinction between a limited liability company and its members. *See Turner v. Andrew*, 413 S.W.3d 272, 276 (Ky. 2013) (collecting cases).

---

[1] The Court, sitting in diversity, applied Kentucky law at summary judgment. *See* DE 131. The parties do not contest that Kentucky law governs this dispute. In general, "Kentucky's choice-of-law rules favor the application of its own law." *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 574 (6th Cir. 2019).

Kentucky law explicitly recognizes as much: "A limited liability company is a legal entity distinct from its members." KRS 275.010(2). When a sole owner of an LLC conducts business on behalf of the entity and later sues for lost business income, the real party in interest (and thus, proper plaintiff) is the LLC, not the sole owner. *See Turner*, 413 S.W.3d at 275–78. The same was true when the president of a car rental service—an incorporated entity—sued to secure a lease that would allow his company to operate at an airport. *Miller v. Paducah Airport Corp.*, 551 S.W.2d 241, 242 (Ky. 1977). Miller was not the real party in interest because he had no personal contractual relationship with the airport and because the corporation, not Miller, would reap the benefit of successful litigation. *Id.* at 242–43; *see Simpson v. Heath & Co.*, 580 S.W.2d 505, 506 (Ky. Ct. App. 1979) ("It is fundamental that an officer of a corporation will not be individually bound when he contracts within the scope of his authority as an agent for the corporation."). "The real-party-in-interest doctrine is salutary in that it protects a defendant from again being harassed for the same cause." *Miller*, 551 S.W.2d at 243. But, "an LLC is not a legal coat that one slips on to protect the owner from liability but then discards or ignores altogether when it is time to pursue a damage claim." *Turner*, 413 S.W.3d at 276.

      Here, Performance Media is almost certainly the real party in interest. In her deposition, LeMaster represented that *the entity* owned one static billboard and electronic advertising credits. *See* DE 100-15 at 6. The exchange implicitly highlighted the difference between personal and entity ownership, and LeMaster never clarified that the property belonged to her individually. *See id.* ("Q: So you own one static billboard? A: Uh-huh. Q: Performance Media does? A: Yes. . . ."). In her supplemental answers to interrogatories, LeMaster represented that she had given the Powells her business card and told them about the credits she could receive for cutting down the billboards. *See id.* at 81. LeMaster further explained to the Powells that Performance Media was

7

her company through which she sold advertising. *Id.* LeMaster's testimony and admissions therefore suggest that Performance Media was conducting its business (via LeMaster) when LeMaster purported to buy and then removed the billboards. In the event of a successful suit, the lost advertising revenue and value of the credits that LeMaster seeks as damages would likely go to the entity, not LeMaster. *See Miller*, 551 S.W.2d at 242. As a result, the third-party claims must be brought in the name of Performance Media, LLC—an impossibility given its unrepresented status.

Moreover, as additional justification for an involuntary dismissal, the Court considers the entire case history in context. This suit has been ongoing for more than three years, owing in part to LeMaster's frequent changes in counsel. *See* DE 149 (Minute Entry from unsuccessful settlement conference, noting LeMaster's unrepresented status due to recent withdrawal by fifth and sixth lawyers); DE 158 (motion to continue trial from LeMaster's seventh lawyer). The record reflects the consequences of LeMaster's disagreements with counsel. *See* DE 145 (Outfront opposing renewed withdrawal motion from LeMaster's fifth and sixth lawyers and describing case delay caused by changes in counsel); DE 148 (granting withdrawal over Outfront's objection but warning LeMaster about the possibility of default judgment against her). This pattern of delay weighs on the Court's assessment of the "need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to actively pursue its claims." *See Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993).

Under the circumstances, all relevant factors support dismissal of Performance Media, LLC. The demonstrated inability to work cooperatively with seven different lawyers smacks of willfulness, bad faith, or fault. *See, e.g.*, DE 26 (seeking withdrawal based on LeMaster's non-

payment and failure to cooperate); DE 93 (citing disagreements about pretrial strategy). The Court notes that two lawyers explicitly invoked ethical concerns as grounds for withdrawal. *See* DE 144; DE 180. Equally troubling is the *pro se* motion charging parties and counsel with colluding. *See* DE 103. With respect to prejudice, the Powells have not (perhaps due to economics) actively defended themselves in this action, but the continuation of this suit does impinge on the Powells' (and the public's) interest in a timely resolution. As for the third factor, LeMaster has long been warned about the consequences of failing to retain—and, by logical extension, keep—entity counsel. *See* DE 111 ¶ 3; DE 148; DE 184. Finally, to this point, the Court has not imposed drastic sanctions; instead, the Court has liberally granted withdrawal and permitted continuances. DE 14; DE 34; DE 94; DE 111; DE 148; DE 181. But, the Court's patience is not infinite; this case cannot continue in perpetuity. The LLC has failed to prosecute.

### B. Supplemental Jurisdiction

To the extent LeMaster individually[2] may assert negligent misrepresentation and breach of contract claims against the Powells, the Court declines to exercise supplemental jurisdiction over these claims. Although the parties' responses do not raise the issue, *see* DE 185; DE 186; DE 187, the Court has a duty to consider subject matter jurisdiction *sua sponte*. *See Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990).

Originally, this was a diversity case. *See* DE 1 ¶¶ 1–6. LeMaster then impleaded the Powells. *See* DE 38 ¶¶ 3, 5. That LeMaster and the Powells shared Kentucky citizenship did not defeat the Court's diversity jurisdiction at that point. *See Grimes v. Mazda N. Am. Operations*, 355 F.3d 566, 572 (6th Cir. 2004) ("Third-party claims by defendants for contribution against a third-party under Federal Rule of Civil Procedure 14(a) generally do not require an independent

---

[2] If not for Performance Media's failure to prosecute, the Court would likewise decline to exercise supplemental jurisdiction over its claims, for all of the same reasons.

jurisdictional basis."); *cf.* 28 U.S.C. § 1367(b) (providing no supplemental jurisdiction over claims brought by *plaintiffs* against third-party defendants); *id.* § 1367(a) (extending jurisdiction to full case and controversy, except as stated). In other words, LeMaster's third-party claim fell within the Court's supplemental jurisdiction. However, Outfront's voluntary dismissal removed the basis for the Court's original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Moreover, because LeMaster no longer faces a potential damages judgment for having converted Outfront's property, there is no colorable indemnity claim against the Powells. And, the indemnity claim, asserted under Rule 14(a)(1), was the means by which LeMaster and Performance joined the Powells. All that remains, then, are garden-variety state-law negligence and contract claims between nondiverse parties.

The interests of "judicial economy, convenience, fairness, and comity" do not support the exercise of supplemental jurisdiction under the circumstances. *See Musson Theatrical*, 89 F.3d at 1254. Though LeMaster's third-party claims have been pending in this Court for more than two years, the record pertaining to these claims is relatively undeveloped. No party filed a timely dispositive motion. The third-party claims were effectively dormant throughout the litigation, with the Powells first seeking dismissal after the summary judgment period. As a result, the Court has expended few resources regarding these claims, and any delay that results from dismissal at this stage is attributable to the parties' conduct, strategic choices, or lack of attention. Accordingly, retaining the case at this point would not further judicial economy. In its discretion, the Court elects to dismiss the remaining third-party claims. *See Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805–06 (6th Cir. 2008) ("Ultimately, a court has the discretion to dismiss a third-party claim after the original claims of the plaintiff have been settled, and relegate the third-party plaintiff to a separate suit.."); *D.C.H. v. Brannon*, No. 13-

2237-STA-dkv, 2014 WL 2957029, at *2–3 (W.D. Tenn. June 30, 2014) (declining supplemental jurisdiction, under § 1367(c), over third-party claim after original claims were settled or dismissed). If LeMaster burns to assert the claims against the Powells, she may turn to the courts of the Commonwealth.

IV. CONCLUSION

For all these reasons, the Court **DISMISSES** the third-party complaint (DE 38) without prejudice[3] and will enter separate judgment.

This the 15th day of April, 2020.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge

---

[3] The without prejudice dismissal is quite intentional. Of course, any 1367(c)(3) dismissal is not on the merits and preserves claims for prosecution in state court. Although the failure to prosecute theory could be with prejudice, the Court here elects against. That is primarily because the theoretical indemnity claim could resurface if Outfront ever revived its consequential damages action. Unlikely, but still, the Court would not tie the hands of Performance should that eventuality occur. For all of these reasons, the dismissal is without prejudice.