UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| OUTFRONT MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 7:17-CV-66-REW-EBA |
| v. | ) | |
| | ) | |
| TERRI LEMASTER and | ) | |
| PERFORMANCE MEDIA, LLC, | ) | |
| | ) | |
| Defendants/Third-Party Plaintiffs, | ) | OPINION & ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| RANDALL POWELL and BRENDA | ) | |
| POWELL, | ) | |
| | | |
| Third-Party Defendants. | | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

## I.      BACKGROUND

The Court previously entered judgment against Third-Party Plaintiffs LeMaster and Performance Media, LLC, after concluding that the entity had failed to prosecute and then declining to exercise supplemental jurisdiction over any claims by LeMaster individually. *See* DE 188; DE 189. Relevant to the dismissal was that Performance Media, LLC, (likely the real party in interest in this case) remained unrepresented despite the Court's repeated Orders that it obtain counsel.[1] Also significant was that Outfront's voluntary dismissal of its damages claim against LeMaster had mooted any indemnity claim by her against the Powells and removed the basis for the Court's diversity jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

---

[1] As detailed in the Opinion & Order (DE 188) and previous rulings on the withdrawal of the many lawyers to cycle through this case, LeMaster and the entity had frequent, and often disruptive, changes in counsel.

LeMaster now moves, *pro se*, for relief from judgment and requests a hearing on the motion. The Court begins by addressing threshold jurisdictional and timeliness issues.

*Jurisdiction*

As explained below, LeMaster actually submitted (over the course of six weeks) three motions. *See* DE 190; DE 193; DE 198. LeMaster and Performance Media, LLC, filed separate notices of appeal on the same day as LeMaster's second motion for relief from judgment. *See* DE 192 (Notice of Appeal by Performance Media, LLC); DE 193; DE 194 (Notice of Appeal by LeMaster). The Sixth Circuit case manager noted that both appeals would be held in abeyance pending resolution of the post-trial motion. *See* DE 196 (referring to the second motion, DE 193); DE 197 (same).

Despite the intervening notices of appeal, the Court retains jurisdiction to resolve LeMaster's motions. *See Hunter v. United States*, 792 F. App'x 370, 372 (6th Cir. 2019) ("When a party files a timely Rule 59(e) motion, 'the district court still retains jurisdiction to consider the motion' even if the motion precedes the notice of appeal.") (internal quotation omitted). The Federal Rules of Appellate Procedure contemplate such a scenario:

> If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

Fed. R. App. P. 4(a)(4)(B)(i). Rule 4(a)(4)(A) covers motions "to alter or amend the judgment under Rule 59" and "for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered." Fed. R. App. P. 4(a)(4)(A)(iv), (vi).

Now, to nail down what exactly LeMaster filed. The first motion cited only Rule 60, but the second and third purport to seek relief under both Rules 59 and 60. *See* DE 190; DE 193; DE 198. All three motions ask the Court to set aside Orders ruling on the parties' cross-motions for

summary judgment and dismissing the third-party claims. *See* DE 190; DE 193; DE 198. LeMaster claims entitlement to "any and all damages," including punitive damages, an order directing the Transportation Cabinet to transfer the at-issue electronic advertising credits to LeMaster, costs, and post-judgment interest, as well as sanctions[2] against two attorneys involved in the case. DE 198 at 3. Alternatively, LeMaster requests a jury trial on her "meritorious defense and claims." *Id.*

A litigant's styling of a motion is not controlling. *See Reyes Mata v. Lynch*, 135 S. Ct. 2150, 2156 (2015) ("If a litigant misbrands a motion, but could get relief under a different label, a court will often make the requisite change."). But, the Court agrees that both cited Rules apply here; LeMaster urges the Court to reconsider (under Rule 59) its earlier ruling that Outfront was the rightful billboard owner and argues collateral matters that supposedly justify relief from judgment (under Rule 60). *See Banister v. Davis*, 140 S. Ct. 1698, 1710 n.9 (2020) ("'A post-judgment motion made within [28] days of the entry of judgment that questions the correctness of a judgment,' however denominated, 'is properly construed as a motion to alter or amend judgment under [Rule] 59(e)[.]'") (internal quotation omitted); *In re Barker-Fowler Electric Co.*, 141 B.R. 929, 935 (Bankr. E.D. Mich. 1992) ("The difference between the rules is that FED. R. CIV. P. 59(e) applies to amend or alter a substantive aspect of a judgment, while FED. R. CIV. P. 60 applies to collateral matters.").

---

[2] The embedded, seemingly off-hand mention of sanctions plainly does not comply with the Federal Rules. *See* Fed. R. Civ. P. 11(c)(2).

> A motion for sanctions must be made *separately from any other motion* and *must describe the specific conduct that allegedly violates Rule 11(b)*. The motion *must be served under Rule 5*, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

*Id.* (emphasis added). The Court thus declines to further address the issue.

So construed, the Court has jurisdiction to rule on the motions in their entirety.

*Timeliness*

Twenty-eight days after judgment entry, LeMaster filed her first motion for relief from judgment. *See* DE 190. Outfront responded in opposition, arguing that LeMaster had simply recycled previously rejected arguments and, in any event, cited the wrong Rule. *See* DE 191 at 1–2 (stating that Rule 59(e), not Rule 60, governs the request). LeMaster did not reply. *See* LR 7.1(c). The first motion is timely, whether construed as a motion under Rule 59(e), Rule 60, or both. *See* Fed R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.").

Then, thirty-three days after judgment entry, LeMaster filed another substantially similar motion in which she added a citation to Rule 59(e). *See* DE 193. The Powells (but not Outfront) responded. DE 195. Again, there was no reply from LeMaster. *See* LR 7.1(c). If construed as a Rule 59(e) motion, the second filing would be tardy. *See* Fed R. Civ. P. 59(e) (setting deadline at twenty-eight days after judgment entry). It would, however, be timely under Rule 60. *See* Fed. R. Civ. P. 60(c). LeMaster's second motion is silent on this issue. *See* DE 193.

Finally, seventy days after judgment entry, LeMaster filed a *third* motion—one almost identical to the first two—to which she appended approximately seven hundred pages of exhibits. *See* DE 198. LeMaster did not address timeliness other than to argue that the Court should view the motion (filed June 24, 2020) as having been filed on May 18, 2020. *See id.* at 1. The Powells (but not Outfront) again weighed in on the third iteration and flagged its untimeliness. *See* DE 200 at 1–2. LeMaster replied. DE 201.

The third motion and reply contend, without citation, that LeMaster is entitled to three additional days (from the May 13, 2020, deadline) because LeMaster mails (rather than electronically files) her motions. *See* DE 198 at 1; DE 201 at 3. Per LeMaster, because this adjusted deadline (May 16, 2020) fell on a Saturday, the second motion was timely, as it was filed the following Monday (May 18, 2020). *See* LR 6.2. LeMaster does not explain why the third motion (filed June 24, 2020) should benefit from this computation rule. *See* DE 198 at 1.

LeMaster is mistaken about the Rule 59(e) deadline, which was May 13, 2020. Although Rule 6 provides an additional three days after service by mail, that Rule is inapplicable here. *See* Fed. R. Civ. P. 6(d); *FHC Equities, L.L.C. v. MBL Life Assur. Corp.*, 188 F.3d 678, 681–82 (6th Cir. 1999) ("[W]e adopt the reasoning of the numerous other courts which have found Fed. R. Civ. P. 6[d] inapplicable to motions filed pursuant to Fed. R. Civ. P. 59(e)."). The time to file a motion under Rule 59(e) is triggered not by service but by judgment entry. *See* Fed. R. Civ. P. 59(e); *FHC Equities, L.L.C.*, 188 F.3d at 681–82. Judgment was entered on April 15, 2020. *See* DE 189. The May 18, 2020, filing date is irrelevant, and there is no reason to view the third motion as filed by this inapplicable deadline. However, even though LeMaster failed to cite Rule 59 in the only timely Rule 59 motion before the Court (DE 190), the Court will nonetheless construe the first filing as seeking relief under both Rules, for the reasons already stated. *See* *Reyes Mata*, 135 S. Ct. at 2156. There is no timeliness issue with the Rule 60 grounds for relief.[3]

* * * * *

Concerns about deadlines aside, the Court does not view the later submissions as independent *motions* at all; the sought relief remains the same throughout, and the second and

---

[3] The Court notes, however, that Rule 60 motions toll the time to appeal only when filed within a specified period. *See* Fed. R. App. P. 4(a)(4)(A)(vi) (providing that motion must be filed no later than 28 days after judgment entry).

third "motions" merely supplement the original request. LeMaster never sought leave to supplement the first motion and did not timely reply to responses by Outfront or the Powells. Importantly, the Court does not resolve disputes in piecemeal fashion; litigants, including *pro se* ones, should refrain from barraging the Court. In her only timely Rule 59 motion, LeMaster failed to attach any supporting exhibits; she tendered these for the first time more than two months after judgment entry and more than one month after the initial motion. For Rule 59 purposes, the Court declines to wade in granular fashion through three iterations of the same argument or consider seven hundred pages of documents that are largely irrelevant or duplicative of materials already in the record. The Court assesses the Rule 60 justifications in light of the three filings taken together. Because LeMaster is not entitled to relief under either standard, the Court wholly denies the motions.

## II.     STANDARD

### A.  Rule 59(e)

"A motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) may be granted (1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice." *CGH Transp., Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 823 (6th Cir. 2008). "To constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "[P]arties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007).

**B.  Rule 60(b)**

"[T]he standard for granting a Rule 60(b) motion is higher than the standard for a Rule 59(e) motion." *CGH Transp., Inc.*, 261 F. App'x at 824. "[R]elief under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). A Rule 60(b) motion is not a substitute for an appeal. *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989). The Court must deny a Rule 60(b) motion that attempts to relitigate the case. *Mayhew v. Gusto Records, Inc.*, 69 F. App'x 681, 683 (6th Cir. 2003). Instead,

> Rule 60(b) allows the trial court to relieve a party from a final judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judgment.

*McDowell v. Dynamics Corp. of Am.*, 931 F.2d 380, 383 (6th Cir. 1991) (quoting Fed. R. Civ. P. 60(b)). "[The Sixth] Circuit adheres to the view that courts should apply Rule 60(b)(6) only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper*, 867 F.2d at 294.

> Fraud on the court has been defined by this circuit as:
> [C]onduct: (1) On the part of an officer of the court; (2) That is directed to the "judicial machinery" itself; (3) That is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth; (4) That is a positive averment or is concealment when one is under a duty to disclose; (5) That deceives the court.

*Rodriguez v. Schwartz*, 465 F. App'x 504, 508 (6th Cir. 2012). "Treatises speak of such flagrant abuses as bribing a judge, employing counsel to exert improper influence on the court, and jury

tampering." *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 71 (6th Cir. 2012).

## III.   ANALYSIS

### A.  Rule 59(e)

The gist of LeMaster's reconsideration argument is this: the Court erred when it determined that Outfront had not abandoned the billboards (which effectively led to the conclusion that LeMaster had converted them). *See* DE 190-1 at 8. But, the showing falls far short of the Rule 59(e) standard. LeMaster has not identified a clear error of law or newly discovered evidence or a change in law, nor has she demonstrated that manifest injustice will result from the ruling. Below, the Court sequentially analyzes and ultimately rejects each of LeMaster's objections to the summary judgment ruling.

First, LeMaster notes that the Powells purported to transfer the billboards to her, directing the Court's attention to the KYTC Transfer Form. *See* DE 190-1 at 2–3. But, any representation by the Powells to this effect is irrelevant to Outfront's conversion claim; "good faith is immaterial to conversion, even as to an innocent purchaser of converted property." *See* DE 131 at 23. That is, LeMaster could not acquire title to the billboards by transacting with someone other than the billboard's true owner, even if she was mistaken about the owner's identity.[4]

---

[4] Toward the end of her memo, LeMaster asks the Court to reconsider dismissing the Powells from the lawsuit. *See* DE 190-1 at 22. LeMaster claims that the Powells represented themselves as the billboard owners and signed the bill of sale. *See id.* But, the Court never dismissed the Powells. Instead, the Court dismissed the then-unrepresented entity's third-party claims for failure to prosecute and LeMaster's individual third-party claims, if any, for lack of jurisdiction. *See* DE 188 at 5–6, 9. However, it bears repeating that "because LeMaster no longer faces a potential damages judgment for having converted Outfront's property, there is no colorable indemnity claim against the Powells." *See id.* at 10. The Court expressed no view on the viability of the remaining "garden-variety state-law negligence and contract claims" and never determined that the Powells were not proper parties to such an action. *See id.*

Second, LeMaster highlights the regulatory status of the billboards at the time of the transaction: KYTC deemed the billboards "illegal" on the transfer form; the billboards never had a permit, and KYTC had no records identifying Outfront as the billboard owner. *See* DE 190-1 at 3–4. LeMaster believes that she had permission to remove the billboards. *Id.* However, as before, "LeMaster cites to nothing creating a nexus between regulatory conformity and lease efficacy." *See* DE 131 at 14. That the billboards were non-conforming in some way does not mean that Outfront no longer owned them or that LeMaster could take them without consequence. Whether KYTC knew the owner's identity is irrelevant to whether LeMaster converted the billboards.

Third, LeMaster disputes that she tried to purchase *the leases* and claims that she bought only *the billboard structures* themselves. *See* DE 190-1 at 4–5. For the reasons explained above, the Court need not rehash the history of billboard leases or summarize Kentucky lease law; the determinative principle is that LeMaster could not acquire title from a non-owner.[5]

Fourth, according to LeMaster, she was acting as an assignee of KYTC when she removed the billboards. *See* DE 190-1 at 5–6. The cited authority empowers "any officer or employee of the state Department of Highways" or any peace officer, "upon request of the commissioner," to remove advertising devices declared a public nuisance. *See id.* (citing KRS 177.870). There is no question that LeMaster is not a state employee or a peace officer, and she provides no authority for the proposition that a private citizen may exercise power specifically delegated to certain public employees.

Fifth, LeMaster quotes at length from federal regulations, case law upholding KRS 177.870, and Kentucky Administrative Regulations. *See id.* at 6–10. As already explained, state

---

[5] Additionally, the Court rejects the notion that the words "in the Court's view" indicate that the Court acted as a trier of fact at summary judgment. The Court understands and correctly applied the relevant standard.

or federal regulations do not determine what constitutes abandonment for purposes of the lease agreement. Nor does the cited statute bear on whether LeMaster, a private citizen, converted Outfront's property.

Sixth, LeMaster revives her abandonment-based challenge by arguing that the lease abatement provisions applied only to temporary conditions (not during the fifteen-year period when Outfront did not maintain the billboards). *See id.* at 11–12. Then, she again identifies, but does not explain, a "critical" distinction between the leases and the billboard structures. *Id.* at 12. LeMaster appears to believe that Outfront could have abandoned the physical structures without having abandoned the leases. *Id.* In any event, LeMaster claims that "[a]bandonment is a 'question of fact to be determined by a jury.'" *Id.* The Court directs LeMaster to its earlier treatment of her abatement argument. *See* DE 131 at 15–16. LeMaster offers no Kentucky authority that undermines the Court's previous conclusion that the abatement provision allowed the lease to continue without payment by Outfront. She previously raised and lost her interpretation of the term "temporary." And, despite the contrary citation, abandonment is not always a jury question; the cited case stands for the opposite proposition. *See Ellis v. McCormack*, 218 S.W.2d 391, 392 (Ky. 1949) ("What constitutes a reasonable time is usually a question of fact to be determined by a jury, and that question was submitted in this case. However, the facts and circumstances point so conclusively to an abandonment of the slack pile as to leave no room for a supportable contrary determination.").

Seventh, per LeMaster, the Court overlooked Outfront's failure to send abatement notices by certified mail—an issue LeMaster raised in her summary judgment briefing. *See* DE 190-1 at 14; DE 101-1 at 10 ("There is no evidence in the documentation produced by Outfront that the notifications of abatement sent to Blanche Powell were through certified mail; there are no return

receipts nor is there any indication written on the letters that they were sent certified."). Even taking LeMaster's suspicion as true, this supposed failure by Outfront would not automatically constitute abandonment. By failing to cite any law in support of such a proposition, LeMaster has not shown that the resolution of this issue constitutes clear legal error.

Eighth, LeMaster faults the Court for noting that the parties had not addressed the issue of biennial updates. *See* DE 190-1 at 14.  The Kentucky regulations required owners of non-conforming billboards to submit such updates, and the Court observed that the parties had not discussed this requirement. *See* DE 131 at 14 ("Neither party addresses the record's silence as to these updates, although KYTC did not reflect Outfront's ownership status."). In fact, LeMaster's motion for summary judgment had addressed *another* biennial requirement (under Section 7), which provided that "[a] permittee shall submit biennial renewals." Ultimately, neither of these *regulatory* provisions makes a difference to the issues of lease validity and abandonment. "[S]uch status does not address title among private parties." *See* DE 131 at 14.

Ninth, LeMaster complains that the Court's ruling failed to account for a DOJ press release dated August 15, 1997, which LeMaster views as relevant to Outfront's ownership of the at-issue billboards. *See* DE 190-1 at 14–17. The press release advised that a company by the name of "Outdoor Systems must sell all of National Advertising's outdoor advertising assets in eight" markets, including Louisville, Kentucky. *See id.* at 14. LeMaster suggests that the subject billboards were in the Louisville Market, so she questions Outfront's right to own the billboards in light of the DOJ-approved divestiture. *See* DE 190-1 at 14–16; DE 198-44; DE 198-45; DE 198-46. LeMaster then spends two pages detailing her (unsuccessful) efforts to locate the press release and develop this argument before the Court's summary judgment ruling. *See* DE 190-1 at 16–17. LeMaster's motion for summary judgment did not include this argument. *See* DE 101-1.

She now contends that the press release entitles her to summary judgment or, at a minimum, creates a jury question. *See* DE 190-1 at 17.

Outfront's complaint previously identified Outdoor Systems and National Advertising as its predecessors, and the Court at summary judgment viewed Outfront as successor-in-interest to the relevant leases (which Outfront itself had not signed). *See* DE 1 ¶¶ 8, 10; DE 120-1; DE 131 at 4 & n.3. By affidavit, an Outfront employee recalled the history of entity ownership of the billboards and denied that the acquisition described in the DOJ press release applied to the billboards here. *See* DE 120-1 ¶ 5 ("While this acquisition resulted in the divestiture of National Advertising's assets in certain metropolitan areas, the Billboards at issue were not in any of those areas, and were therefore acquired and retained by Outdoor Systems as successor in interest to National Advertising as part of that 1997 deal."). In February 2019, Outfront attached, as an exhibit to its response opposing summary judgment for LeMaster, the very press release LeMaster had reportedly struggled for months to obtain. *See* DE 120-1 at 8–9.

Under the Rule 59(e) rubric, the press release is not "newly discovered evidence." *See Gencorp, Inc.*, 178 F.3d at 834. It was not "previously unavailable," *see id.*, as it had been filed in the record for several months before the summary judgment ruling. To repeat, "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *See Roger Miller Music, Inc.*, 477 F.3d at 395. To the extent LeMaster now avers that Outfront's ownership of the billboards violates the DOJ-approved divestiture and thus defeats Outfront's conversion claim against her, Rule 59(e) does not open the door to such an argument.

The Court rejects all claims and reconfirms its earlier plenary treatment from the prior substantive rulings attacked by LeMaster.

### B.  Rule 60

#### 1.  Rule 60(b)(6)

LeMaster presses one Rule 60(b)(6) argument: abandonment of client. *See* DE 190-1 at 18–19; DE 193-1 at 16–18; DE 198 at 20–22. LeMaster details the supposed legion deficiencies of her past lawyers: one failed to accurately inform her of the deadline for filing a motion to set aside the summary judgment ruling, and two sought to withdraw without addressing issues raised by LeMaster (including supposed dishonesty by counsel for the Powells and collusion between attorneys and the Court to "throw the case"). *See* DE 190-1 at 18. LeMaster further criticizes the Court for allowing withdrawal without her consent. *See id.*

Neglect and abandonment by counsel have persuaded some courts to afford relief under Rule 60(b)(6). *See Reno v. International Harvester Co.*, 115 F.R.D. 6, 8 (S.D. Ohio 1986); *Gregson v. Metro. Life Ins. Co.*, No. 3:13-0678, 2018 U.S. Dist. LEXIS 129868, at *8–13 (M.D. Tenn. June 20, 2018). In *Reno*, counsel "failed to respond to the Motion for Summary Judgment even after one of this Court's law clerks had called [him] and even after [he] promised to respond." *Reno*, 115 F.R.D. at 8–9 ("It would be unjust—manifestly so—for the Plaintiff to lose his day in Court because his attorneys have—through no fault of his own—abandoned him."). Similarly, Gregson was entitled to Rule 60(b)(6) relief because her counsel stopped providing her updates, failed to respond to communications, and missed the dispositive-motion deadline, which resulted in a dismissal without prejudice. *Gregson*, 2018 U.S. Dist. LEXIS 129868, at *2–3, 12. Moreover, "Gregson was diligent in pursuing her case," and there was no information to "indicate that Gregson was at fault for her attorney's conduct." *Id.* at *11–12.

LeMaster's showing falls far short of this demanding standard. She suffered no prejudice from deadline-related advice, as she timely filed a motion for reconsideration. Her other

complaints generally relate to tangential or speculative matters that in no way affected the Court's legal determinations. Although the lack of representation for Performance Media, LLC, did influence the Court's most recent ruling, neither the Court nor counsel is responsible for the circumstances prompting the requests to withdraw. *See* SCR 3.130(1.2) cmt. (2) ("Clients normally defer to the special knowledge and skill of their lawyer with respect to the means to be used to accomplish their objectives, particularly with respect to technical, legal and tactical matters."). Per the Rules of Professional Conduct, if the counsel and client cannot reach a "mutually acceptable resolution of [a] disagreement, . . . the lawyer may withdraw from the representation." The Court may permit withdrawal without the client's consent or even over the client's objection. *See* LR 83.6(b) (permitting withdrawal where: "[t]he attorney files a motion, certifies the motion was served on the client, makes a showing of good cause, and the Court consents to the withdrawal on whatever terms the Court chooses to impose."). There is no constitutional right to counsel in a civil case. *Lassiter v. Dep't of Soc. Servs.*, 101 S. Ct. 2153, 2158–59 (1981). LeMaster is entitled to proceed *pro se* if she is unable or unwilling to retain and keep counsel. *See* 28 U.S.C. § 1654. Relief under Rule 60(b)(6), which is recognized as "exceptional or extraordinary," is unwarranted here, where there has been no gross negligence by counsel or abandonment of client. *See Hopper*, 867 F.2d at 294. The individual and entity had multiple lawyers, broke those relationships, failed in securing counsel, and cannot now premise a relief request on the fractured history.

### 2. **Rule 60(b)(3)**

Alternatively, LeMaster seeks to have the judgment set aside for fraud on the court. LeMaster maintains that counsel for Outfront and the Powells had an arrangement by which Outfront would pay counsel for the Powells. *See* DE 190-1 at 20–22; DE 193-1 at 18–21; DE

198 at 22–24. During his deposition, Watkins (Outfront's real estate manager) testified that Outfront had never paid the Powells money for anything. *See* DE 190-1 at 21.

To begin, the Court notes that the deponent Watkins, who made the reportedly false statement about payment to the Powells, could not have committed fraud on the court because, under the rubric, he is not an officer of the court. *See Okros v. Angelo Iafrate Constr. Co.*, 298 F. App'x 419, 427 (6th Cir. 2008). Additionally, the alleged falsehood is not "directed to the 'judicial machinery' itself"—it has nothing to do with lease abandonment, the legal issue that largely dictated the summary judgment ruling with which LeMaster disagrees. *See Rodriguez*, 465 F. App'x at 508. There is no other positive averment identified by LeMaster, nor does she isolate instances of concealment while under a duty to disclose. There is no indication that a statement was made with the requisite state of mind: "intentionally false, wilfully blind to the truth, or . . . in reckless disregard for the truth." *See id.* The Court has not been deceived about a material fact; whether Outfront ever paid the Powells is no matter. LeMaster has not demonstrated fraud on the court at all, much less by clear and convincing evidence.

\* \* \* \* \*

Finally, the Court briefly addresses the request for a hearing (DE 202). The Powells oppose the motion. *See* DE 203. In reply, LeMaster notes that this matter has proceeded without "a single in[-]person hearing" and contends that she is entitled to one. *See* DE 204 at 2.

In federal civil cases, it is quite normal—perhaps, even, the rule—for parties to litigate and ultimately resolve entire matters without any in-person hearings. Summary judgment is, after all, summary. LeMaster has cited no authority, and the Court is aware of none, that mandates an in-person hearing under the circumstances. Such a proceeding would not aid the Court's decision

or provide information that cannot be adequately presented in paper or electronic form. With or without an in-person hearing, there is no basis for Rule 59(e) or Rule 60(b) relief in this case.

## IV.    CONCLUSION

For all these reasons, the Court **DENIES** DE 190, DE 193, DE 198, and DE 202.

This the 10th day of August, 2020.

Signed By:

*Robert E. Wier*

**United States District Judge**